## City of Uniontown v. Chapman, et al.

(Decided October 23, 1923.)

### Appeal from Union Circuit Court.

1. Municipal Corporations—Ordinance, Though Not Set Out in Full in Minute Book, Held Proved.—That an ordinance for the construction of a sidewalk appeared in full in the ordinance book, and there was proof that it was properly advertised, held to sufficiently show its proper enactment, though not set out in full in the minute book; it appearing that it was the only one introduced.

2. Municipal Corporations—Evidence Held to Show Notice Directing Construction of Sidewalk.—In action by city to enforce lien on property for construction of sidewalk, evidence held to show that defendant had received notice of the ordinance directing the work to be done.

3. Municipal Corporations.—Competitive Bidding Unnecessary for Construction of Sidewalks in City of Fifth Class.—Under Ky. Stats., sections 3643, 3647, contracts for the construction of sidewalks in excess of $100.00 need not be let by public bidding in cities of the fifth class.

4. Municipal Corporations—Amount of Lien for Construction of Sidewalk in City of Fifth Class.—In an action by a city of the fifth class to enforce a lien for the cost of the construction of a sidewalk, the city, without regard to the amount paid for the construction, held not entitled to recover in excess of the prevailing rate for such work at the time it was done.

V. L. SPALDING and MORTON & MORTON for appellant.

T. S. WALLER, JR. for appellees.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

In the fall of 1917 Uniontown, a city of the fifth class, constructed a concrete pavement, fronting and abutting on the property of appellees, for which it rendered a bill

of 17½ cents per sq. foot, or a total of $217.35. Payment was refused and later this suit was filed, in which it was sought to enforce a lien on the property for the satisfaction of the debt. The chancellor found that the value of the construction was eleven cents per sq. ft., but without stating his reasons otherwise, was of the opinion that the petition should be dismissed, which was done and this appeal results.

In support of the judgment it is urged that (a) there was no valid ordinance authorizing the construction, (b) that appellees were given no legal notice of the action of the board, and the construction of the sidewalk was unauthorized, (c) that the cost of the work was in excess of $100.00 and should have been let by competitive bidding, consequently the action of the city in its construction was unauthorized and void.

We do not think there is any merit in the first contention. The minutes of the board of council show that on May 10, 1917, an elaborate ordinance was introduced and referred back to the city attorney for revision; but this was reintroduced on June 4 and carried, the requisite number of councilmen being present. This ordinance appears in full in the ordinance book, and it is in proof that it was properly advertised, though it is not set out in full in the minute book, but it is shown to be the only one introduced, and we think this sufficient proof of its proper enactment.

Among other things the ordinance authorized the property owners to construct their own pavements by informing the clerk of their intention to do so within three days after being served with notice from the board of the ordinance directing such work to be done.

Appellees testify that they were not served with such notice. The city hall burned and the records were destroyed some time subsequent to this transaction, but a number of witnesses have testified that notices were issued for all property owners, of whom there were several. The town marshal, to whom the notices were delivered, has no independent memory of serving the appellees, but says that he executed all the notices given him, and his best memory is that he had notices for appellees.

It appears that all the other property owners were served with notice; that a councilman by the name of Williams was directed by the city to do the work on its part, and the other property owners agreed that he should

do so, and afterwards paid the city the cost thereof. Williams testifies that he asked appellees to do their own work and that Chapman told him to go ahead and construct it. Chapman denies this and claims that he intended to do his own work; that he had a proposition to have the work done for eleven cents per square foot, but it was too late in the fall to undertake it; further, that the material was obtained from the river, which had "been up" and suitable sand for concreting could not be secured, and that the pavement constructed by the city was of inferior material and part of it froze and was thereby damaged.

Considerable evidence *pro* and *con.* was taken, but from it all the reasonable conclusion is, that the appellees were given notice of the work. It further appears that it was rather late in the season to begin it, some blocks were frozen and the job completed the following spring, but on the whole it was reasonably good.

As to the third contention, section 3647, Ky. Statutes, being a part of the charter of cities of the fifth class, does provide:

"In the erection, improvement and repair of all public buildings and works, in all street and sewer works, and in all work in and about streams, bays or water fronts, or in or about embankments or other works for protection against overflow, and in furnishing any supplies or materials for the same, when the expenditure required for the same exceeds the sum of one hundred dollars ($100.00) the same shall be done by contract, and shall be left to the lowest responsible bidder, after due notice, under such regulations as may be prescribed by ordinance."

However, section 3643, being part of the same chapter, provides:

"The city council is hereby authorized and empowered to order any work they may deem necessary to be done upon the sidewalks, curbing, sewer, streets, avenues, highways and public places of such city. The expenses incurred in making and repairing sidewalks and curbing shall be paid by the owners of the lands fronting and abutting thereon, each lot or portion of lot being separately assessed for the full value thereof, in proportion to the frontage thereof to the entire length of the whole improvement, not exceeding a square, sufficient to cover the total expense of the work; but the owners of such prop-

erty shall have the right to make such improvements, if they prefer doing so, instead of paying for the same. The cost and expenses incurred in constructing or reconstructing streets, avenues, highways, sewers and public places shall be paid out of a general fund of the city or by the owners of the land fronting and abutting thereon, as the city council may in each case determine; or the city council may order and direct that two-thirds only of said cost and expenses so incurred shall be paid by the owners of the lands fronting and abutting said improvements and the other one-third paid by the city; but the local assessments shall not exceed fifty per centum (50%) of the value of the ground after such improvement is made, excluding the value of the buildings and other improvements upon the property so improved."

It will be observed that there are separate references to the expenss incurred in making and repairing sidewalks, and to those incurred in to constructing and reconstructing streets, avenues, highways, sewers and public places, and that the provisions of section 3647, *supra,* seem to apply diectly to the latter class of work.

In construing similar provisions appearing in the charter of towns of the sixth class, this court has held that the provision requiring contracts in excess of $100.00 to be let to public bidding, and requiring the successful bidder to give bond therefor applies only to work included in the second division, *supra,* and does not apply to work ordered in the construction of sidewalks and gutters. Eiesenschmidt v. Ader, 185 Ky. 280.

In view of the similarity of the statutes we feel that that case is of controlling force in this. It follows that the city was not inhibited by the charter from constructing the pavement itself, upon the failure of the property owners to do so. However, in undertaking this character of work it should exercise care and diligence in its prosecution. It is not authorized to act arbitrarily, either by doing such work at unsuitable periods or at exorbitant cost. In this instance it was shown that the work was begun unduly late and part of it was damaged. It is not shown what the work cost, nor has any specification of cost ever been made therefor, except to present a bill for 17¼ cents per square foot. It is shown that the work could have been contracted at eleven or twelve cents per square foot, and that that was the prevailing rate for such work at that time, and the chancellor has found the lower sum to be its value.

In view of all the facts and circumstances we think this is all the city is entitled to recover, and on a return of the case judgment will be entered enforcing a lien for that amount.

Judgment reversed and cause remanded for proceedings consistent with this opinion.